UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
U.S. DISTRICT
INDIANAPOLIS
08 MAY -7 AM 8:57
SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

| | |
|---|---|
| BIG HAT BOOKS, BOXCAR BOOKS AND COMMUNITY CENTER, INC., AMERICAN CIVIL LIBERTIES UNION OF INDIANA FOUNDATION AMERICAN BOOKSELLERS FOUNDATION FOR FREE EXPRESSION, ASSOCIATION OF AMERICAN PUBLISHERS, ENTERTAINMENT MERCHANTS ASSOCIATION, FREEDOM TO READ FOUNDATION, NATIONAL ASSOCIATION OF RECORDING MERCHANDISERS, GREAT LAKES BOOKSELLERS ASSOCIATION, INDIANAPOLIS MUSEUM OF ART, INDIANAPOLIS DOWNTOWN ARTISTS AND DEALERS ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> PROSECUTORS: ADAMS, ALLEN, BARTHOLOMEW, BENTON, BLACKFORD, BOONE, BROWN, CARROLL, CASS, CLARK, CLAY, CLINTON, CRAWFORD, DAVIESS, DEARBORN, DECATUR, DEKALB, DELAWARE, DUBOIS, ELKHART, FAYETTE, FLOYD, FOUNTAIN, FRANKLIN, FULTON, GIBSON, GRANT, GREENE, HAMILTON, HANCOCK, HARRISON, HENDRICKS, HENRY, HOWARD, HUNTINGTON, JACKSON, JASPER, JAY, JEFFERSON, JENNINGS, JOHNSON, KNOX, KOSCIUSKO, LAGRANGE, LAKE, LA PORTE, LAWRENCE, MADISON, MARION, MARSHALL, MARTIN, MIAMI, MONROE, MONTGOMERY, MORGAN, NEWTON, NOBLE, OHIO, ORANGE, OWEN, PARKE, PERRY, PIKE, PORTER, POSEY, PULASKI, PUTNAM, RANDOLPH, RIPLEY, RUSH, ST. JOSEPH, SCOTT, SHELBY, SPENCER, STARKE, STEUBEN, SULLIVAN, SWITZERLAND, TIPPECANOE, TIPTON, UNION, VANDERBURGH, VERMILLION, VIGO, WABASH, WARREN, WARRICK, WASHINGTON, WAYNE, WELLS, WHITE, | No. 1:08-cv-0596-LJM-TAB |

WHITLEY COUNTIES,                    )
                                      )
    Defendants.                       )
                                      )

**Complaint for Declaratory and Injunctive Relief and Notice of Challenge to Constitutionality of State Statute**

### I.    Introductory statement

1.  This action challenges the constitutionality of House Enrolled Act ("HEA") No. 1042 (the "Statute"), eff. July 1, 2008, which requires that persons and entities that intend to offer for sale or to sell literature and other matters deemed harmful to minors under Indiana law must register with the Secretary of State and pay a fee, even if the matters will not be offered to minors. Failure to register is a crime. The Statute is unconstitutional under the U.S. Constitution because

    - it is an unjustified content-based restriction on activity protected by the First Amendment;
    - it is a content-based punitive tax on First Amendment-protected materials;
    - it is also unconstitutionally vague; and
    - it is utterly irrational and therefore violates due process.

2.  The very concept of having to register with the government to distribute books, art and other constitutionally-protected materials is inimical to the First Amendment. Injunctive and declaratory relief is therefore requested.

### II.    Jurisdiction, venue, cause of action

3.  This Court has jurisdiction of this cause pursuant to 28 U.S.C. §§ 1331 and 1343.

4.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

5.  Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2201 and by Rule 57 of the Federal Rules of Civil Procedure.

6. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

### III. Parties

7. Big Hat Books is an independent bookstore located in Indianapolis, Indiana. It sues on its own behalf and on behalf of its patrons.

8. Boxcar Books and Community Center, Inc. ("Boxcar Books") is a not-for-profit organization that operates an independent bookstore in Bloomington, Indiana. It sues on its own behalf and on behalf of its patrons.

9. The American Civil Liberties Union of Indiana Foundation ("ACLU-IN") is an Indiana corporation located in Indianapolis, Indiana. It sues on behalf of itself and it's members.

10. The American Booksellers Foundation For Free Expression ("ABFFE") was organized as a not-for-profit organization by the American Booksellers Association in 1990 to inform and educate booksellers, other members of the book industry, and the public about the dangers of censorship and to promote and protect the free expression of ideas, particularly freedom in the choice of reading materials. ABFFE is incorporated in Delaware and has its principal place of business in New York, New York. ABFFE, most of whose members are bookstores in the United States, sues on its own behalf, on behalf of its members in Indiana, and on behalf of the patrons of their member bookstores in Indiana.

11. The Association of American Publishers, Inc. ("AAP") is the national association of the U.S. book publishing industry. AAP's more than 300 corporate

members include most of the major commercial book publishers in the United States, as well as smaller and nonprofit publishers, university presses, and scholarly associations. AAP members publish hardcover and paperback books in every field and a range of educational materials for the elementary, secondary, postsecondary and professional markets. Members of AAP also produce computer software and electronic products and services. AAP is incorporated in New York and has its principal places of business in New York City and the District of Columbia. AAP represents an industry whose very existence depends on the free exercise of rights guaranteed by the First Amendment. AAP sues on behalf of its members located in Indiana or whose books are offered in Indiana, and on behalf of the readers of its members' books.

12. The Entertainment Merchants Association ("EMA") is a not-for-profit international trade association for the home entertainment industry. Its member companies operate approximately 500 retail outlets in the state of Indiana that sell and/or rent DVDs, computer and console video games, and digitally distributed versions of these products. Membership comprises the full spectrum of retailers (from single-store specialists to multi-line mass merchants, and both brick and mortar and online stores), distributors, the home video divisions of major and independent motion picture studios, video game publishers, and other related businesses that constitute and support the home entertainment industry. EMA members manufacture, distribute, sell, and rent a wide variety of expressive works in the motion picture and video game formats, some of which may contain depictions covered by the statute. EMA is incorporated in the state of Delaware and has its principal place of business in Los Angeles, California. EMA sues

on behalf of its members in the state of Indiana, and on behalf of the customers of its members.

13. The Freedom To Read Foundation, Inc. ("FTRF") is a nonprofit membership organization established in 1969 by the America Library Association to promote and defend First Amendment rights, to foster libraries as institutions fulfilling the promise of the First Amendment for every citizen, to support the rights of libraries to include in their collections and make available to the public any work they may legally acquire, and to set legal precedent for the freedom to read on behalf of all citizens. FTRF'S members include librarians, public libraries, private libraries, academic libraries, private organizations and individuals committed to promoting the freedom to read on behalf of all individuals. FTRF is incorporated in Illinois and has its principal place of business in Chicago. FTRF sues on behalf of its members in Indiana, and on behalf of their patrons.

14. The National Association of Recording Merchandisers ("NARM") is the leading trade association for music retailers, wholesalers, distributors, record labels, multimedia suppliers, suppliers of related products and services, and individual professionals and educators in the music business. NARM advances the promotion, marketing, distribution, and sale of music by providing its members with a forum for diverse meeting and networking opportunities, information, and education to support their businesses, as well as advocating for their common interests. NARM's retail members operate thousands of physical and digital storefronts that account for about 85% of the music sold in the U.S. market. Established in 1958, NARM is celebrating its 50th

Anniversary this year. NARM sues on behalf of its members in Indiana, and on behalf of their patrons.

16. Great Lakes Booksellers Association ("GLBA") is a trade association representing independent bookstores in the Great Lakes Region, which includes Indiana. Twenty-six of GLBA's members are in Indiana.

16. The Indianapolis Museum of Art (the "IMA" or the "Museum") is the fifth largest encyclopedic art museum in the United States, with a collection of more than 50,000 works that spans the scope and range of art history. The Museum also features national and international traveling exhibitions throughout the year. The Museum is dedicated to providing a welcoming environment that fosters meaningful encounters between its visitors and the art of different cultures. IMA sues on its own behalf and on behalf of its members and patrons.

17. The Indianapolis Downtown Artists and Dealers Association ("IDADA") is an unincorporated association of studio artists, art galleries and arts-related businesses that are located in the downtown area of Indianapolis, Indiana. IDADA's primary focus is the creation and marketing of unique and original artwork from Hoosier artists. IDADA sues on behalf of its members, the artists whose materials the members offer, and their patrons.

18. The defendant prosecutors are the elected officials responsible for investigating and prosecuting criminal offenses (including those created by the Statute) within the various counties in the State of Indiana.

### IV. Legal background

19. The Statute is attached to this Complaint as Exhibit 1.

20. The Statute adds a new statutory provision, effective July 1, 2008, which provides, among other things that:

> [a] person (as defined in IC 35-41-1-22) that intends to offer for sale or sell sexually explicit materials shall register with the secretary of state the intent to offer for sale or sell sexually explicit materials and provide a statement detailing the types of materials that the person intends to offer for sale or sell.

HEA No. 1042 (to be codified at IND. CODE § 23-1-55-2 (eff. 7/1/08)).

21. Although the Statute does not apply to a "person" who sells sexually explicit material on June 30, 2008, it does apply to a "person" who changes business locations after June 30, 2008.

22. Indiana Code § 35-41-1-22(a) defines "person" as "a human being, corporation, limited liability company, partnership, unincorporated association, or governmental entity."

23. The term sexually explicit materials includes matters that are harmful to minors as specified by IND. CODE § 35-49-2-2, "even if the product or service is not intended to be used by or offered to a minor." HEA No. 1042 (to be codified at IND. CODE § 24-4-16.4(2)(a)(1) (eff. 7/1/08)).

24. Indiana Code § 35-49-2-2, which defines matters that are "harmful to minors," provides that:

> A matter or performance is harmful to minors for purposes of this article if:
>
>> (1) it describes or represents, in any form, nudity, sexual conduct, sexual excitement, or sado-masochistic abuse;
>> (2) considered as a whole, it appeals to the prurient interest in sex of minors;
>> (3) it is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable matter for or performance before minors; and
>> (4) considered as a whole, it lacks serious literary, artistic, political, or scientific value for minors.

25. The only matters excluded from the definition of "sexually explicit materials" are birth control or contraceptive devices, and matter provided by a communication services provider, physician or public or nonpublic schools. HEA No. 1042 (to be codified at IND. CODE § 24-4-16.4-2(b) (eff. 7/1/08)).

26. The Statute imposes a $250 registration fee on each person intending to sell sexually explicit materials. HEA No. 1042 (to be codified at IND. CODE § 24-4-16.4-2(b) (eff. 7/1/08)). Once registration occurs the law provides that the Secretary of State must notify local officials in the relevant county that the registration has been made. HEA No. 1042 (to be codified at IND. CODE § 24-4-16.4-2(b) (eff. 7/1/08)).

27. The $250 "registration fee" is disproportionate to other equivalent registration fees and is therefore punitive.

28. The Statute provides that it is unlawful to sell sexually explicit materials without the registration and statement required by IND. CODE § 23-1-55-1 and a "person or an employee or agent of a person" who does so commits a Class B misdemeanor. HEA No. 1042 (to be codified at IND. CODE § 24-4-16.4-2(b) (eff. 7/1/08)).

### V. Factual allegations

29. Big Hat Books sells literature that is not obscene under Indiana law, but which contains adult content that may be deemed harmful to minors pursuant to IND. CODE § 35-49-2-2.

30. Big Hat Books' lease to its current property is set to expire within six months and the store is contemplating either moving or expanding at its current location. However, Big Hat Books does not want to take any action by moving or expanding that will require it to register under the Statute.

31. Any registration under the Statute is a matter of public record under Indiana law. IND. CODE §§ 5-14-3-3, 4.

32. Big Hat Books receives more than 50% of its revenues from the sale of children's literature.

33. If Big Hat Books pays the registration fee and is labeled as a purveyor of sexually explicit materials, this may cause potential customers for its children literature to refuse to patronize the business.

34. Consequently, rather than have to pay the registration fee, Big Hat Books will remove material from its adult collection.

35. The building in which Boxcar Books is located is for sale and there is currently a potential buyer for the building.

36. Once the sale goes through Boxcar Books may have to move and it is looking at potential new spaces in the event it has to move after June 30, 2008.

37. Boxcar Books has sections on erotica and art books that feature nudity and sexuality.

38. Boxcar Books also sells children's material in a section of the store that is not proximate to the section for more mature readers.

39. Boxcar Books also does not want to be labeled as a purveyor of sexually explicit material and believes that this would be injurious to its business and reputation

40. Plaintiff American Booksellers Foundation for Free Expression ("ABFFE") has hundreds of bookseller members located from coast to coast, as well as in the state of Indiana. Those located in Indiana, sell and offer for sale books and other materials that

describe or represent nudity, sexual conduct or sexual excitement. ABFFE members are not "adult bookstores."

41. ABFFE members' right to offer and sell in Indiana a full range of mainstream materials, and to learn about, acquire and distribute materials containing nudity, sexual conduct or sexual excitement, and their patrons' right to purchase such materials, as well their business reputation will be seriously infringed by the Statute if it is not enjoined.

42. Plaintiff Association of American Publishers, Inc. ("AAP") sues on behalf of its members that provide mainstream books and other materials to retailers in Indiana.

43. Some of the content published by AAP members and distributed in Indiana contains descriptions or representations of nudity, sexual conduct or sexual excitement. Many of the efforts to ban books in communities across the country have been directed at books published by AAP members. If the Statute is not enjoined, AAP members will be forced to limit the access of Indiana residents to many important books, and Indiana booksellers will be forced to refrain from stocking them.

44. Plaintiff Freedom to Read Foundation Inc. ("FTRF") and its library and librarian members serve as both access and content providers at public, private and academic libraries in the state of Indiana. FTRF's members in Indiana include individuals who access materials at libraries and bookstores in the state.

45. Some of the materials provided or made available by public, private and academic libraries in Indiana, or made available to FTRF members in bookstores in the state, contain speech requiring registration under the Statute. For example, FTRF member libraries include materials such as *Forever* by Judy Blume; *Women on Top* by

Nancy Friday; *Changing Bodies, Changing Lives* by Ruth Bell; *Our Bodies, Ourselves* by the Boston Women's Health Collective; and *It's Perfectly Normal* by Robie Harris.

46. Libraries from time to time sell excess books. If any one of those books may be deemed harmful to minors, the library will have to register under the Statute to conduct the sale.

47. Through various portals, the IMA sells products and materials that could be deemed to fall within the broad definition in the Statute. For instance, the IMA has two retail stores, the IMA Store and the Gallery Shop, where visitors can purchase books, gifts and other merchandise related to art featured in the Museum's special exhibitions and permanent collections. Via the Museum's website, at http://shop.imamuseum.org/, members of the public can purchase merchandise similar to that found in its two stores. Certain of this merchandise may fall within the definition of "sexually explicit materials" contained in Statute, in that the works of art contain images of nudity or sexuality.

48. Further, while the IMA's permanent collections are offered free to the public, tickets must be purchased by non-members for certain of the IMA's traveling exhibitions. The IMA also hosts the Summer Nights film series on the Museum's amphitheater, for which a small admission fee is charged. Both certain of the traveling exhibitions and some of the Museum's film series contain images of nudity or sexuality.

49. The Museum will hire new sales employees after June 30, 2008, and plans to open a new retail store in or about November 2008.

50. In order to comply with the Statute, IMA staff will have to devote significant time and resources to review items sold in its stores, on its website, in its permanent collection and in its traveling exhibitions to determine whether any portion of

these items falls within the definition in the Statute, incorporating Ind. Code § 35-49-2-2, which includes material that "describes or represents, in any form, nudity, sexual conduct, sexual excitement, or sado-masochistic abuse" and other elements. The elements in the definition, including "prevailing standards in the adult community" and "serious literary, artistic, political, or scientific value for minors" are sufficiently complex and vague that the Museum will be required to devote significant resources to training employees and hiring legal assistance to comply with the statute, if they are able to comply at all.

51. The Museum does not want to be labeled as a purveyor of sexually explicit material and believes that such a label would be a misrepresentation or a mischaracterization and might deter visitors from exhibitions and programs that have true artistic and educational value.

52. IDADA is governed by a nine-member Board of Directors and has approximately 150 members, representing a broad spectrum of local artists, galleries and art dealers.

53. Many of IDADA's members offer to sell or sell works of art that could be deemed to fall within the definition of "sexually explicit materials" contained in the Statute, in that the art may contain images of nudity or sexuality.

54. After June 30, 2008, IDADA and its members will host numerous exhibitions and shows at a variety of locations in Indianapolis where works of art that contain images of nudity or sexuality will be offered for sale.

55. Many of IDADA's members will change locations or open new locations after June 30, 2008. Many of IDADA's members will hire new sales employees after June 30, 2008.

56. To comply with the Statute, IDADA's members are likely to have to devote many hours per year to reviewing works of art to determine whether any portion of these items falls within the definition in the Statute, incorporating Ind. Code § 35-49-2-2, which includes material that "describes or represents, in any form, nudity, sexual conduct, sexual excitement, or sado-masochistic abuse" and other elements. The elements in the definition, including "prevailing standards in the adult community" and "serious literary, artistic, political, or scientific value for minors" are sufficiently complex and vague that IDADA's members will be required to devote significant resources to training employees and hiring legal assistance to comply with the statute, if they are able to comply at all.

57. If IDADA and its members pay the registration fee and are labeled purveyors of sexually explicit materials, customers and potential customers may refuse to patronize the business. IDADA's members do not want to be labeled as purveyors of sexually explicit material and believe that this would be injurious to their businesses and reputations

58. The Indiana members of the ABFFE, the Indiana members of the Entertainment Merchants Association, the Indiana members of National Association of Recording Merchandisers, the Indiana members of FTRF, and the Indiana members of GLBA and the members of IDADA, as well as the IMA, Big Hat Books and Boxcar Books sell or offer for sale, among other things, literature, software, recordings, and/or

art that is not obscene under Indiana law, but which contain content that may be deemed to be "harmful to minors" pursuant to IND. CODE § 35-49-2-2.

59. The above plaintiffs and members of plaintiffs, who will be sometimes referred to as "the Retailers," are not what are termed "adult bookstores," or "adult businesses." They sell material developed for children. They do not want to be labeled as purveyors of sexually explicit materials, which, they believe would be injurious to their business reputation.

60. However, among other things, the Retailers sell such things as, for example, material designed to assist couples' sexuality, such as *Joy of Sex*; classics of literature such as Henry Miller's *Tropic of Cancer*; Steinbeck's *Of Mice and Men* and Nabokov's *Lolita*; John Cleland's *Memoirs of a Woman of Pleasure*; romance novels; graphic novels, mainstream videos containing nudity and/or sexual conduct; books of photography; Judy Blume's *Forever*; music DVD's with explicit lyrics, all of which could be deemed "harmful to minors" as to minors of varying ages.

61. All the Retailers are planning to or will have to hire new employees at some point after June 30, 2008.

62. Inasmuch as the Statute applies to any biological person, every time one of the Retailers hires a new employee after June 30, 2008, who may be selling material in the store, the new employee will have to register, and pay the fee, required by the statute.

63. The Statute requires the Retailers to comb through their inventory regularly in an attempt to determine if anything that they sell meets the definition of "sexually explicit materials," whether or not the items are being sold to minors.

64. Given that the definition of "harmful to minors" as incorporated by the Statute has no indication of the age of the minors in question, the Retailers are uncertain how to assess whether something is, in fact, harmful to minors.

65. The Statute will inhibit the Retailers in their business operations, will cause increased costs and administrative burdens on plaintiffs and other retailers and will restrict the availability of First-Amendment protected materials to adults.

66. The Retailers are unclear what is required by the Statute insofar as it requires, under penalty of criminal prosecution, that they, or their members, not only register with the Secretary of State, but provide a "statement detailing the types of materials" that will be sold.

67. The Statute contains no guidance as to what "detailing the types of materials" means.

68. The Retailers are uncertain if this requires a specific inventory of material and/or whether they must amend their "statement" as inventory changes.

69. The Statute will therefore cause the Retailers to engage in self-censorship in an effort to avoid the Statute's registration requirements. As such, the Statute will have a chilling effect on the Retailers and their customers and a concomitant reduction of this material at these locations.

70. The Retailers do not wish to register as required by the Statute.

71. The Retailers are adversely affected by the Statute.

72. The ACLU-IN is the Indiana affiliate of the American Civil Liberties Union and is dedicated to the preservation and protection of constitutional rights and liberties.

73. The ACLU-IN strongly supports First Amendment rights.

74. The ACLU-IN has approximately 5,500 members throughout the State of Indiana, some of whom will be burdened by the Statute to the extent that it will result in material being removed from booksellers' shelves and other outlets and will make it more difficult for members to obtain this material throughout the State of Indiana.

75. The Statute's definition of "sexually explicit materials" is extremely broad and includes not just material that is available at bookstores, but also material available at such diverse locations as museum shops, mainstream video stores, department stores, grocery stores and pharmacies.

76. Moreover, inasmuch as the Statute imposes its requirements on "sellers," it will apply not only commercial sellers, but Indiana residents who sell "sexually explicit materials" at garage sales or flea markets, and who sell personal goods on the internet through eBay®, or similar sites.

77. The Statute serves no rational purpose.

78. At all times defendants have acted under color of state law.

79. The actions of defendants are causing and will cause irreparable harm for which there is no adequate remedy at law.

## VI. Legal claims

80. The Statute violates the First Amendment to the United States Constitution as a content-based restriction inasmuch as it requires payment of a fee and receipt of a permit in order to engage in protected First Amendment activity. It is an invalid content-based regulation of speech.

81. The Statute is an unconstitutional content-based punitive tax on First Amendment-protected materials.

82. The Statute is unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

83. The Statute is fundamentally irrational and therefore is unconstitutional in violation of the Fourteenth Amendment to the United States Constitution.

### VII. Request for relief

WHEREFORE, plaintiffs request that this Court:

a. Accept jurisdiction of this case.

b. Declare that the Statute is unconstitutional in its entirety both on its face and as applied to the plaintiffs for the reasons specified above.

c. Enter a preliminary injunction, later to be made permanent, enjoining the enforcement of the Statute.

d. Award plaintiffs their costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

e. Award all other proper relief.

Dated: May 7, 2008

*signature*

Jon B. Laramore
No. 17166-49
Matthew T. Albaugh
No. 23293-49
Baker & Daniels LLP
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
317/237-0300
fax: 317/237-1000
jon.laramore@bakerd.com
matthew.albaugh@bakerd.com

Attorneys for Indianapolis Museum
of Art; Indianapolis Downtown Artists
and Dealers Association

*signature*

Kenneth J. Falk
No. 6777-49
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059 ext. 229
fax: 317/635-4105
kfalk@aclu-in.org

Attorney for Big Hat Books
Boxcar Books and Community
Center, Inc.; American Civil
Liberties Union of Indiana

*signature*

Michael A. Bamberger
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, NY 10020
212/768-6756
fax: 212/768-6800
mbamberger@sonnenschein.com

Attorney for
American Booksellers
Foundation for Free Expression;
Association of American Publishers;
Freedom to Read Foundation;
Entertainment Merchants Association;
National Association of Recording
Merchandisers and Great Lakes
Booksellers Association