UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION


BIG HAT BOOKS, et al.,                    )
        Plaintiffs,                    )
                              )
    vs.                    )        1:08-cv-596-SEB-TAB
                              )
PROSECUTORS: ADAMS, et al.,                    )
        Defendants.                    )


**ENTRY GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

This cause comes before the Court on the Motion for Summary Judgment [Docket No. 21] filed by Plaintiffs, Big Hat Books, et al., on May 23, 2008.[1]  In this litigation, brought against the prosecutors of each of Indiana's ninety-two counties, Plaintiffs challenge the constitutionality of Indiana House Enrolled Act No. 1042 ("HEA 1042"), which is to go into effect on July 1, 2008, requiring that persons who intend to offer for sale or sell sexually explicit materials must register with Indiana's secretary of state, pay a fee, and provide a statement detailing the types of materials intended to be offered for sale.  Plaintiffs assert that the statute is not narrowly tailored to meet a compelling government interest, that it unlawfully imposes a content-based fee or tax on First Amendment rights, and that it is fatally overbroad and vague.  Defendants dispute

---

[1] Plaintiffs initially filed a Motion for Preliminary Injunction [Docket No. 10] seeking injunctive relief against enforcement of HEA 1042 during the pendency of this litigation. Defendants concede that the Court can rule on the merits of this case without augmentation of the record.  Def.'s Resp. at 1.  Because we grant summary judgment in Plaintiffs' favor and thereby resolve this litigation in its entirety, we need not consider Plaintiffs' motion for preliminary injunction, and, accordingly, it is <u>DENIED</u> as moot.

Plaintiffs' contentions regarding the constitutionality of HEA 1042, asserting that the

statute is a constitutional, reasonable regulation of speech, and is not unconstitutionally

vague or overbroad.  For the reasons detailed in this entry, we <u>GRANT</u> Plaintiffs' Motion

for Summary Judgment, and enter final judgment accordingly.

<u>**Factual Background**</u>

***Statutory Text of HEA 1042***

HEA 1042 was enacted by the Indiana General Assembly during the 2008

legislative session, and is to be codified at Indiana Code § 23-1-55-2, effective July 1,

2008.  The statute provides, in relevant part:

> A person (as defined in IC 35-41-1-22)[2] that intends to offer for sale or sell
> sexually explicit materials shall register with the secretary of state the intent
> to offer for sale or sell sexually explicit materials and provide a statement
> detailing the types of materials that the person intends to offer for sale or sell.

HEA No. 1042 (to be codified at IC § 23-1-55-2).  The statute further provides

that, upon such registration, the secretary of state must notify local officials of the county

in which the registrant is located of the registrant's intent to offer for sale or sell sexually

explicit materials.  <u>Id.</u> (to be codified at IC § 23-1-55-3(b)).  Registration is a matter of

public record, and such records are subject to public inspection and disclosure.  IC § 5-

14-3-3.

The secretary of state is also to collect a registration fee of $250.00 from each

---

[2] Under IC § 35-41-1-22, a "person" is defined as "a human being, corporation, limited
liability company, partnership, unincorporated association, or governmental entity."

registrant.  HEA No. 1042 (to be codified at IC § 23-18-12-3(a)(24)).  Plaintiffs note that, among the other fees currently collected by the secretary of state for various required filings, the amount charged ranges from no fee to a high of $90.00 (the latter amount for documents such as articles of organization or articles of merger involving a domestic limited liability company).  IC § 23-18-12-3(a).  Thus, the fee imposed by HEA 1042 is more than two-and-a-half times as large as the next-highest fee currently being collected by the secretary of state.

HEA 1042 defines "sexually explicit materials" as:

(a)     . . . [A] product or service:

      (1)     that is harmful to minors (as described in IC 35-49-2-2)[3], even if the product or service is not intended to be used by or offered to a minor; or

      (2)     that is designed for use in, marketed primarily for, or provides for:
            (A)     the stimulation of the human genital organs; or

---

[3] The term "harmful to minors," is codified in the current Indiana statutory scheme as follows:

    A matter or performance is harmful to minors . . . if:

    (1)     it describes or represents, in any form, nudity, sexual conduct, sexual excitement, or sado-masochistic abuse;
    (2)     considered as a whole, it appeals to the prurient interest in sex of minors;
    (3)     it is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable matter for or performance before minors; and
    (4)     considered as a whole, it lacks serious literary, artistic, political, or scientific value for minors.

IC § 35-49-2-2.

3

        (B)    masochism or a masochistic experience, sadism or a sadistic experience, sexual bondage, or sexual domination.

(b)    The term ["sexually explicit materials"] does not include:

    (1)    birth control or contraceptive devices; or

    (2)    services, programs, products, or materials provided by a:
        (A)    communications service provider (as defined in IC 8-1-32.6-3);
        (B)    physician; or
        (C)    public or nonpublic school.

HEA No. 1042 (to be codified at IC § 24-4-16.4-2).

By its terms, the statute "does not apply to a person who sells sexually explicit materials on June 30, 2008, unless the person changes the person's business location after June 30, 2008." Id. (to be codified at IC § 23-1-55-1). The statute further provides that "[a] person or an employee or agent of a person who knowingly or intentionally offers for sale or sells sexually explicit materials in violation of [the statute] commits unregistered sale of sexually explicit materials, a Class B misdemeanor[,]" which is punishable by a fine of up to $1,000.00 and up to 180 days imprisonment. Id. (to be codified at IC § 24-4-16.4-4); IC § 35-50-3-3.

*Plaintiffs and Allegations*[4]

*Big Hat Books*

Big Hat Books is a bookstore located in the Broad Ripple neighborhood of Indianapolis, Indiana, which will be moving to a new location sometime after July 1, 2008. Barden Aff. ¶¶ 1, 3. Big Hat Books sells literature with "strong sexual content" which "is not appropriate for all children," such as D.H. Lawrence's <u>Lady Chatterley's Lover</u> and Vladimir Nabokov's <u>Lolita</u>, as well as books about adult human sexuality, including "works that contain explicit information of a sexual nature." <u>Id.</u> ¶¶ 4-6. Big Hat Books also has a large selection of children's books; indeed, more than 50% of its revenues come from the sale of children's literature, and it asserts that registration as required by HEA 1042 will cause injury to the store's sales of children's literature. <u>Id.</u> ¶¶

---

[4] We note Defendants' contention that several of the factual allegations in Plaintiffs' affidavits are "merely speculative" and not within Plaintiffs' personal knowledge, with regard to the business consequences of registration under the statute. Defs.' Resp. at 3-5. Defendants assert that these statements proffered by Plaintiffs are inadmissible, unsupported by studies or historical facts, and cannot provide a basis for summary judgment under Federal Rule of Civil Procedure 56(e).

Federal Rule of Evidence 701 provides that the testimony of a lay witness is "limited to those opinions or inferences which are . . . rationally based on the perception of the witness[.]" Plaintiffs' affidavits reflect facts and opinions based on their personal knowledge and experience as businesspeople. <u>See</u> <u>Burlington Northern R.R. Co. v. State of Nebraska</u>, 802 F.2d 994, 1004-05 (8th Cir. 1986) (holding that "perceptions based on industry experience . . . [provide] a sufficient foundation for lay opinion testimony"). Plaintiffs' assessments of their own business reputations, and forecasts of actions which threaten those reputations, are admissible opinions, as are Plaintiffs' expectations of the amount of effort and expense that they anticipate will be required to comply with the statute. These opinions and inferences are rationally based on the perceptions of the affiants. Further, as Plaintiffs point out, Big Hat Books has asserted that it will stop selling potentially sexually explicit materials altogether rather than face a potential loss of business. Defendants have not challenged this statement of future action, nor have they challenged the standing of the ACLU of Indiana in representing its members who may be unable to purchase items as a result of the statute.

7-8.

Big Hat Books's owner, Elizabeth Barden, asserts that, rather than register under HEA 1042, she will purge the store's shelves of literature that could possibly be construed as "sexually explicit" under the statute; though "[t]his will, of course, diminish the material available to adults, . . . [Ms. Barden feels] it is a course [she] must take if the law goes into effect." Id. ¶ 10. Given that Ms. Barden believes she cannot risk the loss of business that she anticipates will result upon registration under HEA 1042, she will be faced with the administrative burden of "constantly comb[ing]" through the store's inventory to ensure that no sexually explicit materials are being sold, thus restricting the availability of literature for the store's adult patrons. Id. ¶¶ 11-12.

*Boxcar Books*

Boxcar Books and Community Center, Inc. ("Boxcar Books") is a non-profit, volunteer-run bookstore in Bloomington, Indiana. The building in which it is housed is currently for sale, so Boxcar Books is presently looking at potential new spaces in anticipation of having to move to a new location. Friedman Aff. ¶¶ 2, 4, 5. Boxcar Books sells erotica, art books which feature nudity and sexuality, literature and magazines with sexual content, and books about women's sexual health and sexual abuse. Id. ¶¶ 6-9. In addition, Boxcar Books has a children's literature section which is maintained separately from the section for more mature readers. Id. ¶ 12.

As Boxcar Books interprets HEA 1042, it will have to register and pay the $250.00

fee for itself *and* for each new employee who is hired after June 30, 2008. Boxcar Books asserts that even a single $250.00 payment is economically burdensome to its non-profit organization, and that multiple payments would be severely burdensome. Abbey Friedman – Boxcar Books's General Coordinator and member of its board of directors – testifies that she believes Boxcar Books's registration under the statute will decrease its sales of children's literature. Ms. Friedman maintains that registration under the statute will increase costs and administrative burdens to Boxcar Books, but that the alternative – purging the store's shelves of sexually explicit material – would injure the store financially and reduce its ability to offer a wide range of literature to the community. Id. ¶¶ 2, 10, 11, 13, 17.

Ms. Friedman further states that, though she is aware of the statute's requirement that a statement detailing the types of materials to be sold be submitted to the secretary of state, she "[has] no idea what this means and what degree of specificity must attend such a disclosure. I do not know if I need to list every work we have and whether that must be supplemented as the works change." Id. ¶ 14.

*Associational Plaintiffs*

Six Plaintiffs in this litigation are trade organizations who assert that their members' First Amendment freedoms will be negatively and unfairly impacted by the proposed law. These Plaintiffs are: the American Booksellers Foundation for Free Expression ("ABFFE"), an affiliate of the American Booksellers Association, the nation's

leading association of general interest bookstores; the American Association of Publishers ("AAP"), the national association of the United States book publishing industry; the Entertainment Merchants Association ("EMA"), a not-for-profit international trade association for the home entertainment industry, the members of which operate retail outlets that sell and rent DVDs and video games; the Freedom to Read Foundation ("FTRF"), a sister organization of the American Library Association, the members of which include public, private, and academic libraries, librarians, and library patrons;[5] the Great Lakes Booksellers Association ("GLBA"), a trade association representing independent bookstores in the Great Lakes Region, including Indiana; and the National Association of Recording Merchandisers ("NARM"), a trade association for music retailers, wholesalers, distributers, record labels, and suppliers.

All of these associations have member affiliates or otherwise do business in Indiana; of those whose members include retailers (ABFFE, EMA, GLBA, and NARM), none are so-called "adult bookstores." All seek to serve a clientele which includes younger customers. ABFFE, EMA, and GLBA assert that some of their members intend or are likely to move locations after the statute becomes effective.

Each associational Plaintiff has members who produce or sell expressive materials, the contents of which are sexually related and/or contain nudity, and which may be considered "harmful to minors" under Indiana law. Such materials encompass books,

---

[5] FTRF notes that many of its members sell excess used books periodically, and that if any such books could be deemed "harmful to minors," the librarian and the library would have to register under HEA 1042. Krug Decl. ¶ 5.

DVDs, and musical recordings, and include romance novels, works on art and photography, and materials related to sexual education, sexual health, and sexual orientation. These Plaintiffs assert that registration under HEA 1042 will be injurious to the business and reputation of their members, and that such injury can be avoided only by purging their stocks completely of each piece of merchandise that could potentially fall within the proscriptions of HEA 1042 – a task which is logistically burdensome, if not impossible, and which will lead to over-inclusive self-censorship.

*Indianapolis Museum of Art*

The Indianapolis Museum of Art ("IMA") features a collection of over 50,000 works, and operates two retail stores and a website which offer gifts, books, and merchandise for sale – some of which contain nudity and/or may be considered "sexually explicit" under the statute. Anderson Decl. ¶¶ 2-3. The IMA also requires the purchase of tickets by non-members for certain exhibitions, and charges a small admission fee for its Summer Nights film series. Some exhibitions and featured films contain images of nudity or sexuality. Id. ¶ 4.

The IMA plans to open a new retail store in or about November 2008, and plans to hire new sales employees after June 30, 2008. It asserts that it will need to devote significant time and resources – including hiring legal assistance – to reviewing items sold in its stores, on its website, in its exhibitions, and in its film series to determine if they are covered by HEA 1042, due to the complexity and vagueness of the statute. Id. ¶

6.

*Indianapolis Downtown Artists and Dealers Association*

The Indianapolis Downtown Artists and Dealers Association ("IDADA") is an organization comprised by about 150 artists, galleries, and art dealers located in and around downtown Indianapolis. Many of the works offered for sale by IDADA's members contain images of nudity or sexuality, some of which may be considered "sexually explicit materials" inappropriate for minors under the statute. Zickler Aff. ¶¶ 2-3. Many of IDADA's members will change locations, open new locations, and hire new sales staff after June 30, 2008. Like the other Plaintiffs, IDADA asserts that its members will need to devote significant resources to reviewing items possibly within the purview of the statute, and fears that registration under the statute will be injurious to their sales and reputations of its members. Id. ¶¶ 5, 7.

*American Civil Liberties Union of Indiana Foundation*

The American Civil Liberties Union of Indiana Foundation ("ACLU-IN"), the Indiana branch of the American Civil Liberties Union, also joins as a Plaintiff in this action. The ACLU-IN has 5,500 members in Indiana, who claim an interest in purchasing a full range of mature literature having sexual content, and who assert that HEA 1042 will restrict the range of such literature available for their purchase. Harrington Aff. ¶¶ 6-13.

*Procedural History*

Plaintiffs filed this suit on May 7, 2008, against each prosecutor of each of Indiana's ninety-two counties, facially[6] challenging the constitutionality of HEA 1042 and seeking to enjoin its enforcement. In light of the approaching effective date of the statute, the Court conducted a telephonic scheduling conference with counsel on May 13, 2008, during which the parties agreed to an expedited summary judgment briefing schedule. On May 23, 2008, Plaintiffs filed the motion for summary judgment which became fully briefed on June 12, 2008, and upon which we now rule.

## Legal Analysis

### I. Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255.

---

[6] Plaintiffs' Complaint asserts that the statute is unconstitutional both facially and as applied, though their briefs are devoted almost entirely to a facial challenge. Because we hold that Plaintiffs' facial challenge is well-taken, we do not address whether the statute is unconstitutional as applied to Plaintiffs.

However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one

essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

A plaintiff's self-serving statements which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).

## II.     The Appropriateness of Plaintiffs' Facial Challenge to the Statute

As a preliminary matter, we address Defendants' contention that Plaintiffs may not properly bring a facial challenge to HEA 1042. Defendants' challenge focuses on the bifurcated definition of "sexually explicit materials" contained in the statute: the term applies to both "[a] product or service . . . that is harmful to minors[]" (HEA No. 1042 (to be codified at IC § 24-4-16.4-2(a)(1))), and to "[a] product or service . . . that is designed for use in, marketed primarily for, or provides for . . . the stimulation of the human genital organs[,] or . . . masochism or a masochistic experience, sadism or a sadistic experience, sexual bondage, or sexual domination." Id. (to be codified at IC § 24-4-16.4-2(a)(2)). Defendants refer to the latter categorization as the "sexual devices" clause and assert that Plaintiffs, though purporting to challenge the statute as a whole, limit their legal arguments only to the constitutionality of the "harmful to minors" clause. Moreover, Defendants maintain, nothing in Plaintiffs' affidavits suggests that any of them sells

13

"sexual devices" of the sort described in the statute – and that restrictions on sexual devices are, in any event, constitutional (see, e.g., Williams v. Morgan, 478 F.3d 1316 (11th Cir. 2007)).  Accordingly, Defendants assert that Plaintiffs have not properly brought (and lack standing to bring) a facial challenge to the statute, in accordance with United States v. Salerno, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."); Washington State Grange v. Washington State Republican Party, 128 S.Ct. 1184, 1190-91 (2008).

Plaintiffs dispute Defendants' contention that the portion of HEA 1042 to be codified at Indiana Code § 24-4-16.4-2(a)(2) applies only to sexual "devices" – the word "devices" in fact appears nowhere in the statute, and the clause on its face applies to "product[s] or service[s]."  Further, Plaintiffs assert, the entire statute on its face applies to Plaintiffs in that several works sold by Plaintiffs may be understood to fall within the second half of the "sexually explicit materials" definition – that is, that they are products designed for use in, marketed primarily for, or providing for stimulation of the genitals, sexual domination, sadism, and the other ends described in this part of the statute. Plaintiffs point to books which provide illustrations of sexual bondage; works of the Marquis de Sade, which they argue "provide for" sadism or a sadistic experience; and certain erotic works of art created by a member of IDADA.  Pls.' Reply at 4-5.

We conclude with little difficulty that the materials sold by the various Plaintiffs

clearly implicate the statutory definition of "sexually explicit materials" to be codified at

Indiana Code § 24-4-16.4-2(a)(2). We agree with Plaintiffs that there is no basis in the

statute for limiting that clause to so-called "sexual devices," as proposed by Defendants;

while the "devices" contemplated by Defendants (by which we assume they mean

implements for the *physical* stimulation of the genitals, masochistic or sadistic

experiences, etc.) would certainly appear to come within this categorization, nothing in

the statute limits the definition to *only* such implements. Indeed, it is plain to us that

works (books, DVDs, etc.) which provide instruction, illustration, or encouragement

regarding genital stimulation, bondage, etc. – of which there are surely many – would be

covered by Section 2(a)(2) as "provid[ing] for" such activities. We further see no basis in

the statute to exclude from coverage those works which might be designed to *mentally or*

*physiologically* "provide[] for" the stimulation of the genitals (i.e., erotica) – which would

extend the reach of the statute to cover an impossibly broad set of materials.[7]

Accordingly, we hold that Plaintiffs have standing to facially challenge HEA 1042 in its

entirety.[8]

---

[7] We discuss vagueness and overbreadth problems with HEA 1042 in more detail in section D, *infra*.

[8] We additionally note Plaintiffs' argument that <u>Salerno</u> is inapplicable to First Amendment-based challenges in which overbreadth and the chilling of constitutional rights are concerns. In <u>Washington State Grange</u>, cited by Defendants, the Supreme Court noted that "[o]ur cases recognize a second type of facial challenge in the First Amendment context under which a law may be overturned as impermissibly overbroad because a 'substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" <u>Id.</u> at 1190 fn. 6 (citing <u>New York v. Ferber</u>, 458 U.S. 747, 769-71 (1982)). Plaintiffs assert that <u>Salerno</u> is inapplicable in the First Amendment context and that Defendants' argument is thus

(continued...)

**III.   Constitutionality of HEA 1042**

    **A.   Constitutionality as a Content-Based Restriction on Speech**

Plaintiffs challenge the constitutionality of HEA 1042 first on the grounds that it is a content-based regulation of protected expression that fails to meet the requisite standard of strict scrutiny. Defendants assert that an intermediate level of judicial scrutiny is proper here, given the "zoning-like" aims of the statute. We address these arguments below.

        **1.   Level of Scrutiny to Be Applied**

It is well-established that "sexual expression which is indecent but not obscene is protected by the First Amendment." <u>Sable Communications of California, Inc. v. FCC</u>, 492 U.S. 115, 126 (1989). Plaintiffs assert that their First Amendment interests are implicated by the statute's regulation of their distribution of such materials, a proposition not negated by the commercial nature of such distribution. <u>See</u> <u>Smith v. California</u>, 361 U.S. 147, 150 (1959). They maintain that the statute forces them to make a difficult and unduly burdensome choice: register under the statute and be economically harmed by paying the registration fee and putting forth the resources to maintain compliance, as well

---

[8](...continued)
misplaced, due to the overbreadth of HEA 1042. Plaintiffs are correct that a facial challenge on the bases of overbreadth and vagueness is permissible in the First Amendment context as an exception to the <u>Salerno</u> rule. <u>See</u> <u>Ben's Bar, Inc. v. Village of Somerset</u>, 316 F.3d 702, 708 fn. 11 (7th Cir. 2003); <u>Horton v. City of St. Augustine</u>, 272 F.3d 1318, 1331 (11th Cir. 2001). We address Plaintiffs' overbreadth and vagueness arguments in greater detail *infra*.

as potentially losing business by being labeled purveyors of sexually explicit materials – or, remove potentially offending material, causing a weighty administrative burden and reducing the amount of expressive material available to the public, in an effort to avoid criminal prosecution.

Plaintiffs assert that the statute, as a content-based regulation on protected speech, must be analyzed under the strict scrutiny framework. Under such analysis, content-based regulations are "presumptively invalid[,]" and can be upheld only if narrowly tailored to serve compelling state interests. R.A.V. v. City of St. Paul, 505 U.S. 377, 382, 395 (1992).

Defendants rejoin that strict scrutiny is not the proper framework for analysis of HEA 1042, and that an intermediate degree of scrutiny is appropriate. Defendants rely on Justice Kennedy's concurring opinion in City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425 (2002), in which he wrote that, in accordance with the holding of City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986), "[a] zoning restriction that is designed to decrease secondary effects and not speech should be subject to intermediate rather than strict scrutiny." Alameda Books, 535 U.S. at 448 (Kennedy, J., concurring). Defendants assert that HEA 1042, which requires registration and notification of local authorities of the intent to sell sexually explicit materials, is "comparable to" a zoning ordinance directed at the secondary effects of adult businesses, and that intermediate scrutiny should thus be applied. They contend that "[a]lthough HEA 1042 is not a zoning statute or ordinance *per se*, the bill's author and sponsors intended that it perform the

same function in areas of the state without zoning ordinances." Defs.' Resp. at 12.

Under intermediate scrutiny, so-called "time, place, and manner" regulations are constitutional if "they are designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communication." Renton, 475 U.S. at 47. In conducting such analysis, courts consider evidence which demonstrates that the measure at issue is aimed at preventing secondary effects (blight, crime, etc.) brought about as a result of the speech. Id. at 50-51. Defendants assert (though they cite no evidence in support of such assertion) that "[t]he Indiana General Assembly relied on the fact that businesses were sometimes less than forthright about their true nature and [thus] enacted a statute that simply requires registration if the intent is to sell sexual devices or materials that are harmful to minors." Defs.' Resp. at 13.

It is clear to us that HEA 1042 is precisely the sort of content-based restriction necessitating examination through the lens of strict scrutiny. As Plaintiffs note, courts have consistently found statutes regulating sexually explicit speech to be content-based restrictions. See, e.g., Ashcroft v. ACLU, 542 U.S. 656, 658 (2004); United States v. Playboy Entertainment Group, Inc., 529 U.S. 804 (2000). Defendants' argument that the statute is akin to a zoning ordinance, and therefore subject to an intermediate degree of scrutiny, is unsupported both factually and by controlling precedent. The statute, plainly, is not a zoning ordinance, nor have Defendants adduced *any* evidence demonstrating that the statute is actually aimed at any secondary effects associated with the sale of sexually

explicit materials.[9]  Crucially, the statute imposes *criminal penalties* for its violation,

unlike any land use regulation of which we are aware.  <u>Compare</u> <u>Reno v. American Civil</u>

<u>Liberties Union</u>, 521 U.S. 844, 872 (1997) (noting that "the severity of criminal sanctions

may well cause speakers to remain silent rather than communicate even arguably

unlawful words, ideas, and images[]" ).  Our next inquiry, then, becomes whether the

statute is narrowly tailored to serve a compelling governmental interest.

### 2.      Strict Scrutiny Analysis

Defendants assert, and Plaintiffs do not dispute, that the government possesses a

compelling interest in the protection of minors from exposure to materials deemed

indecent.  Indeed, as Plaintiffs, themselves, point out, the Supreme Court has "repeatedly

recognized the governmental interest in protecting children from harmful materials."

<u>Reno</u>, 521 U.S. at 875; <u>Federal Communications Comm'n v. Pacifica Foundation</u>, 438

U.S. 726, 749 (1978).  However, such an interest "does not justify an unnecessarily broad

---

[9] Defendants make reference to a National Public Radio story – while no doubt interesting, clearly not admissible evidence – which suggests that the statute's purpose is to give local communities a "heads up" if an adult bookstore is attempting to locate in that community. Defs.' Resp. at 2.  Defendants also cite stories from the <u>Chicago Tribune</u> and <u>Indianapolis Star</u> (both challenged as inadmissible hearsay by Plaintiffs) in which the bill's author and a Senate co-sponsor describe the statutory purpose underlying the law.  Defendants contend that the statute "is nothing more than a requirement of being truthful and not covering up the true nature of a business."  <u>Id.</u> at 3.  Even if intermediate scrutiny were the proper framework for analysis, Defendants provide a wholly inadequate evidentiary record to support the proposition that the legislature aimed HEA 1042 at secondary effects.  <u>See</u> <u>Alameda Books</u>, 535 U.S. at 438 (noting that "shoddy data or reasoning" cannot support a connection between speech and secondary effects, and that the "evidence must fairly support the . . . rational for [an] ordinance"); <u>Annex Books v. City of Indianapolis</u>, 333 F. Supp. 2d 773, 784 (S.D. Ind. 2004) (Barker, J.) (noting that "simply *assuming* [secondary] effects exist does not satisfy the evidentiary standard").

suppression of speech addressed to adults. . . . [T]he Government may not 'reduc[e] . . . the adult population . . . to . . . only what is fit for children.'" Reno, 521 U.S. at 875 (quoting Denver Area Educ. Telecomms. Consortium, Inc. v. Federal Communications Comm'n, 518 U.S. 727, 759 (1996)). Thus, our analysis here turns on whether HEA 1042 is narrowly tailored towards that goal, such that the restriction amounts to the least restrictive means available to achieve the governmental interest. See Ashcroft v. American Civil Liberties Union, 542 U.S. 656, 666 (2004); Reno, 521 U.S. at 874.

In considering the tailoring of the statute, courts "must take into account the other mechanisms the State currently employs to serve the statute's purpose, as well as other, less restrictive means it could reasonably employ." Krislov v. Rednour, 226 F.3d 851, 863 (7th Cir. 2000). Indiana law already criminalizes (as a Class D felony) the knowing dissemination *to minors* of materials harmful to minors (as defined in IC § 35-49-2-2, the same definitional statute referenced in HEA 1042), as well as display of such materials in areas to which unaccompanied minors have visual, auditory, or physical access. Indiana Code § 35-49-3-3. Plaintiffs contend that enforcement of this law, already on the books, is a less restrictive and more narrowly tailored means of achieving the stated government interest.

The challenged statute, on the other hand, requires registration "even if the product or service is not intended to be used by or offered to a minor[.]" HEA No. 1042 (to be codified at IC § 24-4-16.4-2(a)(1)). The challenged statute, by its terms, has a far broader scope. Defendants have not provided any argument or evidence that HEA 1042 "does not

burden more speech than is necessary to serve its compelling interests" (Krislov, 226 F.3d at 863), nor that enforcement of the existing dissemination law fails to adequately shield children from harmful materials – nor, for that matter, that the registration and notification scheme (which, as Defendants point out repeatedly, does not restrict sales) would even aid the government's interest to any significant degree. The new law, by explicitly encompassing sales of materials to adults, does not embody the narrow tailoring the Constitution requires when First Amendment activity is so burdened.[10]

**B.      Constitutionality of HEA 1042 as a Tax on Free Expression**

Plaintiffs also challenge the statute on the grounds that it operates as an unconstitutional fee or tax on the exercise of constitutional rights. It is "well-established that the First Amendment protects against the imposition of charges, such as a [licensing fee or] tax[], for the enjoyment of free speech rights . . . [though] the government is permitted to exact a fee in order to defray the cost of legitimate regulations, even though such a fee incidentally burdens speech." Mainstream Marketing Servs., Inc. v. Federal Trade Comm'n, 358 F.3d 1228, 1247 (10th Cir. 2004) (discussing Murdock v. Pennsylvania, 319 U.S. 105, 113-14 (1943)). However, the government may not impose a financial burden on the exercise of speech by virtue of its content. See Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd., 502 U.S. 105, 118 (1991) (applying strict scrutiny to a law establishing a "financial disincentive to create or

---

[10] The vagueness and overbreadth of the law, to be discussed *infra*, further demonstrate that the law is not narrowly tailored toward the government's interest.

publish works with a particular content[]"); <u>Murdock</u>, 319 U.S. at 113-14 (striking down a door-to-door licensing tax because it was "not a nominal fee imposed as a regulatory measure to defray the expenses of policing the activities in question. . . . [Rather,] it restrains in advance . . . constitutional liberties . . . and inevitably tends to suppress their exercise.").

Defendants assert that the $250.00 fee for registration under HEA 1042, though admittedly higher than any other fee charged for registration of various sorts with the Indiana secretary of state, is justified as a means of covering the costs of the statute's implementation. Specifically, they argue, the fee covers not only the filing and maintenance of the documents, but also the additional task of notifying local officials of the filing, unlike any other filing with that office; and that "[v]iewed as a user fee, the statutory fee just makes sense and resembles a fee to petition for a zoning approval or variance." Defs.' Resp. at 15.

As we have discussed *supra*, this measure is clearly content-based. Defendants have provided not a shred of evidence suggesting that the $250.00 fee is proportional to the amount of work required by the secretary of state's office resulting from a filing, and we cannot fathom how "notification of local officials" could justify such a fee. (As we have noted, the next-highest state-imposed fee – for the filing of documents such as articles of organization – is $90.00). In our judgment, the imposition of such an exorbitant fee is itself a punitive measure "collected as a condition to the pursuit of activities whose enjoyment is guaranteed by the First Amendment." <u>Murdock</u>, 319 U.S.

22

at 114.  Such a requirement does not pass constitutional muster.

## C.        Constitutionality as a Permit Requirement

Plaintiffs also challenge the statute as an unconstitutional permit requirement for the exercise of protected speech, relying upon the Supreme Court's pronouncement in Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton, 536 U.S. 150, 166 (2002), that "[e]ven if the issuance of permits . . . is a ministerial task that is performed promptly and at no cost to the applicant, a law requiring a permit to engage in [protected] speech constitutes a dramatic departure from our national heritage and constitutional tradition."

The Supreme Court has long held that "in the area of free expression[,] a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship."  City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 757 (1988) (collecting cases).  However, a permitting requirement may pass constitutional muster if it limits the deciding official's discretion and the period of restraint before judicial review.  Defendants assert that HEA 1042 is not, in fact, a permitting provision at all, because it places *no* discretion in any public official; they note that there is no provision in the statute detailing any grounds for denial of the right to sell sexually explicit materials upon registration, and thus that a business that registers under the law cannot be denied such right.

We have our doubts about Defendants' argument because it lands wide of the

mark.  The vagueness of the statutory requirements for registration (to be discussed *infra*) appears to give rise to the need for discretion on someone's part, if not the issuer of the permit.  Unless the statute is read to allow any person (or business) who pays the $250.00 fee to receive the registration, and nothing more, Defendants are likely correct in arguing that this is not a permitting statute.  However, the lack of clearly articulated standards for meeting registration requirements invites the possibility that the law must be interpreted and, as such, it may be arbitrarily applied.  Though it is true that no clause in the statute specifically provides for permit denial by the secretary of state's office, surely the county prosecutors will be empowered to decide if and when compliance with the statute has occurred.  Thus, Defendants' contention that the statute places *no* discretion in any public official is in error, because the discretion necessarily afforded to *prosecutors* charged with enforcement of such a vaguely worded statute (to be addressed in section D, *infra*) creates the real and significant possibility that a business will be prosecuted under the statute either for an unregistered sale or for incomplete or erroneous disclosures.  We therefore conclude that the statute fails constitutional scrutiny on this basis as well.

### D.  Vagueness and Overbreadth of HEA 1042

#### 1.  Vagueness

A statute is unconstitutionally vague if it "fails to define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and it fails to establish standards to permit enforcement in a nonarbitrary, nondiscriminatory manner."

Koutnik v. Brown, 456 F.3d 777, 783 (7th Cir. 2006) (quoting Fuller v. Decatur Public School Bd., 251 F.3d 662, 666 (7th Cir. 2001)).  However, "perfect clarity and precise guidance" are not required.  Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989).  See also Hill v. Colorado, 530 U.S. 703, 732 (2000) ("A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."); Reno, 521 U.S. at 871-72 (noting that vagueness "raises special First Amendment concerns because of its obvious chilling effect on free speech[,]" and that vagueness is "a matter of special concern" when the statute at issue imposes criminal penalties).

*Registration Requirements*

Plaintiffs assert that several key terms in the statute are inherently vague or defined in a way that fails to provide fair notice, and will thus cause a chilling effect on otherwise lawful conduct.  Among these are the requirement that registrants "provide a statement detailing" the types of sexually explicit materials intended to be offered for sale.  HEA No. 1042 (to be codified at IC § 23-1-55-2).  Plaintiffs object that the statute provides no explanation or instructions regarding the level of detail required in such a statement, or whether (and how often) it needs to be updated when a vendor's inventory changes.

Defendants admit that the statute suffers from "poor drafting," but assert that it is not unconstitutionally vague.  They assert that businesses should "[logically] assume that

any material subjecting a business to the registration requirement in the first place should be included in its statement to the Secretary of State" (id. at 19), and that Plaintiffs' affidavits provided for purposes of this litigation constitute sufficiently detailed statements for purposes of registration under HEA 1042.

Plaintiffs' objection to Defendants' "oh, don't worry" approach to defending this statute is well-taken. It is wholly unclear whether a statement "detailing" the materials for sale needs to include specific titles, descriptions of content, or simply a general categorization (e.g., "books"). The statute provides no guidance whatsoever to merchants attempting to comply with the law, and surely creates the danger of self-censorship in an effort to avoid criminal penalties. The fact that Plaintiffs provided descriptions in their affidavits (which, we note, had widely varying degrees of specificity among them) of some of the materials offered for sale is irrelevant, and in any event Defendants' assertion that such descriptions are acceptable does not appear to us to be derived from the language of the statute, nor does their opinion purport to bind any of the state's ninety-two prosecutors who are responsible for enforcement of HEA 1042. Further, Defendants have sidestepped entirely the issue of whether such a statement needs to be updated as inventories change; clearly, the statute provides no direction on this point. There can be no doubt that compliance with such a vague mandate will be unduly burdensome, will have a chilling effect on expression, and will fail to provide ordinary people with a reasonable degree of notice as to the law's requirements; the Constitution demands no

less.[11]

*Personhood*

Plaintiffs also assert that the statute's application to a "person" – defined as a "human being, corporation, limited liability company, partnership, unincorporated association, or governmental entity" – contributes to the vagueness of the statute.  Since any "person" who intends to offer for sale or sell sexually explicit materials is required to register (and pay) under the statute, Plaintiffs assert that it is unclear whether the *employees* of a business – who are, after all, biological human beings – need to separately register under the law.  This uncertainty extends to whether each new employee of a business, hired after the effective date of the statute, would need to register.

Defendants respond that a person of ordinary intelligence would be able to ascertain that the intended meaning of "person" under the statute requires only that "there

---

[11] Though Plaintiffs do not explicitly contend that the term "a product or service that is harmful to minors" is unconstitutionally vague, we note that both parties discuss the Indiana Court of Appeals' recent holding in Zitlaw v. State, 880 N.E.2d 724 (Ind. Ct. App. 2008).  In Zitlaw, a defendant challenged the constitutionality of the phrase "performance that is harmful to minors" as unconstitutionally vague, as that term is found in IC § 35-49-2-2 (the same defining statute referenced by HEA 1042).  The defendant was charged under the statute for exposing himself in public.  The Court held that the statute was not unconstitutionally vague because "individuals of ordinary intelligence would comprehend the performance harmful to minors statute adequately enough to inform them of the proscribed conduct."  Id. at 732.

Defendants assert that, because the "harmful to minors" statute was upheld in Zitlaw, the term cannot be deemed unconstitutionally vague here.  Plaintiffs rejoin that Zitlaw raised no First Amendment issue and has a much more problematic scope when applied in the present context involving "materials", rather than in the "performance" context of Zitlaw; for example, a romance novel offered for sale in a drugstore would be difficult to characterize as "harmful" or not.  Because we find that the statute is unconstitutionally vague for the reasons previously discussed, we need not further opine on whether the phrase "harmful to minors" is also constitutionally infirm as referenced in HEA 1042.

is one 'person' as defined in the statute[] who is offering the materials for sale. The sales

associates are merely assistants and are not 'selling' the materials but assisting the owner

to sell them. They cannot sell what they do not own; only the owne[r] can sell (i.e.,

transfer title to) property." Defs.' Resp. at 19. Defendants cite Sections 3 and 4 of the

statute, which provide that "[a] person *or an employee or agent of a person*" (emphasis

added) must comply with the statute in order to avoid criminal sanctions. HEA No. 1042

(to be codified at IC §§ 24-4-16.4-3, -4). Plaintiffs rejoin that this reference to "an

employee or agent" is superfluous and merely complicates the already confusing wording

of the statute.

We agree with Plaintiffs that a fair reading of the statute leaves entirely unclear the

matter of to whom it applies. Defendants' argument – that the statute requires only one

registration per business per location – is not set out as such in the language of the statute.

Inadequate notice of these requirements, the violation of which gives rise to possible

criminal sanctions, renders the law unconstitutionally vague. In addition, the likelihood

of confusion and the resultant self-censorship on the part of merchants is very high,

creating a chilling effect on otherwise free speech. See Dombrowski v. Pfister, 380 U.S.

479, 494 (1965) ("So long as [a] statute remains available to the State the threat of

prosecutions of protected expression is a real and substantial one. Even the prospect of

ultimate failure of such prosecutions by no means dispels their chilling effect on protected

expression.").[12]  We conclude that the statute is, for these reasons and in these respects, unconstitutionally vague.

## 2.      Overbreadth

Plaintiffs' final argument is that HEA 1042 is substantially overbroad because it burdens a vast amount of expression protected by the First Amendment in an attempt to meet its regulatory aim.  See Lewis v. City of New Orleans, 415 U.S. 130, 131-32 (1974); Schultz v. City of Cumberland, 228 F.3d 831, 848-49 (7th Cir. 2000) (noting that overbreadth may invalidate regulations "when a limiting construction is not readily available and the unconstitutional applications of the regulation are real and substantial in relation to the regulation's plainly legitimate sweep. . . . When the government restricts speech not associated with harmful secondary effects, then the government cannot be fairly said to be regulating with those secondary effects in mind and the regulation expends beyond its legitimate reach.").

Defendants rejoin that the statute is not overbroad because, as a registration requirement, it does not explicitly ban any speech and thus "does nothing to remove speech from the marketplace of ideas."  Defs.' Resp. at 22.  This analysis is seriously flawed, as we have discussed, because the content-based regulation will surely chill the

---

[12] We note also, as do Plaintiffs, that the profusion of cross-references within the statute exacerbates its inscrutability; the statute contains cross-references to six separate sections of the Indiana Code. See Keyishan v. Bd. of Regents of Univ. of State of New York, 385 U.S. 589, 604 (1967) ("Vagueness of wording is aggravated by prolixity and . . . by manifold cross-references to interrelated enactments and rules.").

lawful dissemination of materials (and, as we have described, such effects are amplified by the vagueness of the statute and the criminal penalties resulting from its violation); as Plaintiffs have asserted, some will pull stock from their shelves rather than dealing with the administrative hassle and expense of compliance with HEA 1042.

Clearly, a vast array of merchants and materials is implicated by the reach of this statute as written. A romance novel sold at a drugstore, a magazine offering sex advice in a grocery store checkout line, an R-rated DVD sold by a video rental shop, a collection of old Playboy magazines sold by a widow at a garage sale – all incidents of unquestionably lawful, nonobscene,[13] nonpornographic materials being sold *to adults* – would appear to necessitate registration under the statute. Such a broad reach is, without question, constitutionally disproportionate to the stated aim of the statute to provide a community "heads-up" upon the opening of "adult bookstore-type businesses." Defs.' Resp. at 2.

---

[13] Defendants point out that the Supreme Court has ruled that "[t]he mere assertion of some possible self-censorship resulting from a statute is not enough to render an antiobscenity law unconstitutional under our precedents." Fort Wayne Books, Inc. v. Indiana, 489 U.S. 46, 60 (1989). However, the law at issue here is not an antiobscenity law, and the degree of self-censorship resulting from a statute which is so vastly overbroad is not a "mere assertion," but a significant infringement on free expression.

Defendants also assert that, because the "material harmful to minors" definition parallels the Miller test for obscenity (i.e., it includes an exception for material with serious value and considers community standards of decency) – it cannot be considered unconstitutionally overbroad. See Miller v. California, 413 U.S. 15 (1973); Reno, 521 U.S. at 873. We need not expansively discuss the merits of this argument, since the second half of the "sexually explicit materials" definition – covering products designed for use in, marketed primarily for, or providing for stimulation of the genitals, sexual domination, sadism, etc. – is so broadly written a clause that it clearly includes materials sold by Plaintiffs, and thus does not mirror the Miller definition.

## IV.    Conclusion

For the reasons detailed in this entry, Plaintiffs' facial challenge to HEA 1042 is well-founded.  We hold that HEA 1042 unduly burdens First Amendment rights, and is unconstitutionally vague and overbroad.  Therefore, Plaintiffs' Motion for Summary Judgment is <u>GRANTED</u>.  IT IS SO ORDERED.


Date: _07/01/2008_____

_Sarah Evans Barker_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Matthew Thomas Albaugh
BAKER & DANIELS LLP
matthew.albaugh@bakerd.com

David A. Arthur
INDIANA STATE ATTORNEY GENERAL
David.Arthur@atg.in.gov

Michael A. Bamberger
SONNENSCHEIN NATH & ROSENTHAL LLP
mbamberger@sonnenschein.com

Eric James Beaver
INDIANA STATE ATTORNEY GENERAL
eric.beaver@atg.in.gov

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Jon  Laramore
BAKER & DANIELS LLP
jon.laramore@bakerd.com